United States District Court
Middle District of Florida
Jacksonville Division

**JAMES JONES**,

    Plaintiff,

v.                                                                                          NO. 3:21-cv-482-TJC-LLL

**SAN MARCO X, LLC**

    Defendant.
_____

**Report and Recommendation Approving Settlement Agreement**

The parties, James Jones and San Marco X, LLC, request approval of their proposed settlement agreement under the Fair Labor Standards Act (FLSA), 29 U.S.C. §§ 201, *et seq*. Doc. 22, Joint Motion to Approve Settlement Agreement. This matter was referred to me for the issuance of a report and recommendation as to whether the proposed settlement satisfies the FLSA's requirements. Doc. 21. After initially reviewing the motion, the Court found the parties had not provided enough information for a recommendation to be made whether their proposed settlement was "a fair and reasonable resolution of [the] bona fide dispute over FLSA provisions" and directed the parties to file their settlement agreement and any associated claim releases. Doc. 23 (citing *Lynn's Food Stores, Inc. v. U.S. ex Rel. U.S. Dept. of Labor*, 679 F.2d 1350, 1355 (11th Cir. 1982)). The parties did so, doc. 24; the matter is now ripe for review.

1

## Background

Defendant is a Florida corporation which operates a restaurant in Jacksonville, Florida; plaintiff worked for defendant as a chef for about four months, from September 2020 until December 2020. Doc. 1 ¶¶ 3, 10, 12.

In May 2021, plaintiff filed a two-count complaint alleging defendant violated the FLSA (count I), 29 U.S.C. §§ 201, *et. seq*, and breached an employment agreement between the parties (count II) by failing to pay plaintiff for the last four days he was employed. Docs. 1 at 3-5; 24 at 2. The Court then entered an FLSA scheduling order requiring plaintiff to answer the Court's interrogatories attached to its order, doc. 5. Before answering the Court's interrogatories, the parties entered into a settlement agreement to resolve plaintiff's claims. Under their proposed settlement, defendant agrees to pay plaintiff $1,500, representing all damages, including unpaid wages and $1,500 in attorney's fees and costs to plaintiff's counsel. Docs. 22 at 3, 24, 24-1. The parties assert that the settlement is fair and reasonable as required by law. Docs. 22, 24.

## Authority

The FLSA reflects Congress' intent "to protect certain groups of the population from substandard wages and excessive hours which endangered the national health and well-being and the free flow of goods in interstate commerce." *Brooklyn Sav. Bank v. O'Neil*, 324 U.S. 697, 706 (1945). Unlike many legal claims, the parties may not bargain away the FLSA's protections. *Id*. at 708. If an employee proves a violation of the FLSA, the employer must pay him the unpaid wages, an equal amount of

liquidated damages, and attorney's fees and costs. 29 U.S.C.§ 216(b). There are two ways to settle and employee FLSA claim: one is where an employee accepts payment issued directly under the supervision of the Secretary of Labor; the other is under a stipulated judgment entered by a court that has reviewed the proposed settlement. *Lynn's Food Stores,* 679 F.2d at 1353, 1355.

In acknowledgment of FLSA's public policy considerations, such as the unequal bargaining power between employees and their employer, the Eleventh Circuit has limited the ability of private parties to independently settle suits brought under the act. *Nall v. Mal-Motels, Inc.*, 723 F.3d 1304, 1307 (11th Cir. 2013). Thus, in an action brought under 29 U.S.C. § 216(b) for "back wage[s] or liquidated damage[s]," the Court must "scrutinize[] the settlement" and make a finding that the proposed compromise represents a "fair and reasonable" resolution "of a bona fide dispute over FLSA provisions." *Lynn's Food Stores,* 679 F.2d at 1353, 1355. If the settlement agreement reflects a reasonable compromise, the Court may "approve the settlement [ ] to promote the policy of encouraging settlement of litigation." *Id.* at 1354.

A court should presume that a settlement is fair and reasonable. *Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977). "In addition to examining the merits of the proposed settlement and ascertaining the views of counsel . . . practical considerations may be taken into account." *Id*. at 1330. Of note are whether fraud or collusion drove the settlement, the complexity of the cases, the costs of litigation, the stage of the proceedings, the likelihood of success on the merits, counsel's opinions, and the range of possible recovery. *Leverso v. SouthTrust Bank of Ala., Nat'l. Ass'n*, 18 F.3d 1527, 1530

n.6 (11th Cir. 1994). The FLSA provides for reasonable attorney's fees. 29 U.S.C.§ 216(b). If the parties negotiated attorney's fees separately from the damages to be awarded to plaintiff, which protects from "conflict . . . taint[ing] the settlement," then the court need not undertake a lodestar review of the attorney's fees for reasonableness. *Bonetti v. Embarq Mgmt. Co.*, 715 F. Supp. 2d 1222, 1228 (M. D. Fla. 2009).

## Analysis

### A. The Settlement Agreement

The parties represent that their proposed settlement is fair and reasonable, as required by *Lynn's Foods*. Having considered the motion, doc. 22, scrutinized the settlement agreement, doc. 24-1, and reviewed the joint supplemental memorandum, doc. 24, it appears that the settlement agreement should be approved, particularly considering the protracted costs, time, and uncertain outcome of any litigation, and the relatively small amount of compensation at issue. Plaintiff alleges he is owed $769.23 in unpaid wages for his last four-days of work. Doc. 24 at 2. Defendant, however, asserts plaintiff did not work on those days and claims to have witnesses substantiating its position. *Id.* The parties also remain at odds about whether the alleged conduct violates the FLSA because defendant mailed plaintiff a payroll check to the address on record, but it was later returned as undeliverable. *Id.* As expected, plaintiff believes he has a high probability of success on the merits, while defendant indicates it has defenses lessening the probability of success. *Id.* Plaintiff acknowledges that had the litigation progressed, defendant may have prevailed before a jury or at the summary judgment stage resulting in plaintiff recovering nothing. Doc. 21, page 7. I

am satisfied that this case involves disputed issues of liability under the FLSA which constitute a bona fide dispute.

In support of their proposed settlement, the parties identify that the case is at the end of the pleading stage, and that resolving the dispute at this time will enable the parties to keep legal costs down.[1] Docs. 22 at 2-3; 24 at 2. The parties also point to their collaborative efforts from early stages of the litigation; after counsel for defendant appeared in the case, he attained the payroll and time records at issue to quickly assess the merits of plaintiff's claims. Soon after, before undertaking discovery, the parties reached an agreement on the matter. *Id.*

Counsel explains that that the parties were "carefully" advised and subsequently fully accepted the terms of the settlement agreement and signed the same, doc. 22 at 3; and no fraud or collusion induced the parties to enter the agreement. Doc. 24 at 2-3. Further, the parties note they were represented by counsel during the litigation, including settlement negotiations. Doc. 22 at 2. As a result, they believe their agreement reflects a reasonable compromise of disputed issues. Docs. 22, 24.

In assessing the fairness of the settlement agreement, I must also consider whether the release of claims in the settlement agreement renders it unreasonable. *DeGraff v. SMA Behav. Health Servs. Inc.*, 945 F. Supp. 2d 1324, 1329 (M.D. Fla. 2013) (citations omitted). I have reviewed the settlement agreement, doc. 24-1, which

---

[1] By the time the joint memorandum was filed, prior to the commencement of discovery, the parties "incurred fees that are at least a seven-times multiple of the amount of uncompensated work in dispute." Doc. 24 at 2.

contains a clause releasing all "claims, disputes, and differences" related to the facts outlined in the complaint. *Id.* ¶ 2(A)-(E).[2] The agreement then specifies that plaintiff

> releases and forever discharges any and all claims described below which [plaintiff] may have against [defendant] . . . . Claims include any and all claims, demands, damages, causes of action, rights, attorneys' fees and expenses whatsoever, that arise from or relate in any way to the facts, allegations[,] and disputes that are the subject matter of the Dispute, including any claims of any nature whatsoever in law or equity which were, or could have been asserted, in the Dispute. This releases all claims described above, including those of which [plaintiff] is not aware. This Release applies to all claims resulting from anything that has happened to now.

*Id.* ¶ 3(D).

"Courts typically disfavor general release clauses in FLSA settlement agreements." *DeGraff*, 945 F. Supp. 2d at 1329 (citations omitted). *See also Bright v. Mental Health Res. Ctr. Inc.*, No. 3:10-cv-427-J-37TEM, 2012 WL 868804, at *4 (M.D. Fla. Mar. 14, 2012) ("Pervasive, overly broad releases have no place in settlements of most FLSA claims."). Here, however, the agreement outlines that the release relates to the facts outlined in the complaint relevant to defendant's alleged failure to pay plaintiff wages for his last four days of work, doc. 24-1 ¶ 2(A)-(D); taking the release at its expansive interpretation, however, it could also relate to any claims that could arise or relate to plaintiff's short term of employment with defendant. *Id.* at ¶ 3(D).

---

[2] The agreement recites that it was "entered into with reference to the following facts" in the above-captioned case, which "asserts claims for breach of an alleged contract and alleged violations by [defendant] of the [FLSA] stemming from his employment by [defendant,]" and "collectively all facts constitute the 'Dispute.'" *Id.* (2)(A)-(D).

6

While the language is broad, it differs from general release clauses disfavored by some courts in the Middle District of Florida, in that it "allay[s] any concern that [p]laintiff[ ] may be giving up an unknown, but valuable, claim that is *completely* unrelated to the FLSA claim,[3] and which confers an undeserved and disproportionate benefit on the employer and effects an unanticipated, devastating, and unfair deprivation on the employee." *Coleman v. Target Corp.*, No. 6:12-cv-1315-Orl-37GJK, 2013 WL 867891, at *6 (M.D. Fla. Mar. 1, 2013) (citation and quotations omitted) (emphasis added)). Thus, I find the release does not constitute a "prohibited side deal that [would undermine] the fairness or reasonableness of the parties' FLSA settlement." *Id.* (citing *Heath v. Hard Rock Café Int'l, Inc.*, No. 6:10-cv-344-Orl-28KRS, 2011 WL 5877506, at *4 (M.D. Fla. Oct. 28, 2011)). Additionally, the release relates to claims concerning plaintiff's past employment and does not constitute a waiver of claims that may arise from future employment. Doc. 24-1 ¶ (3)(D) ("This Release applies to all claims resulting from anything that happened up to now."). Thus, I find the release provision here does not undermine the fairness or reasonableness of the settlement agreement.

---

[3] Plaintiff's breach of contract claim (count II) is based on the same set of facts, the failure to provide plaintiff's last four-days of wages, as plaintiff's FLSA claim (count I). *See generally* doc. 1. Thus, I find that the parties apparent proposed dismissal of the breach of contract claim (count II) also does not render the release an impermissible side-deal that would undermine the fairness of the agreement, as discussed above. *See Coleman v. Target Corp.*, No. 6:12-cv-1315-Orl-37GJK, 2013 WL 867891, at *6 (M.D. Fla. Mar. 1, 2013) (citing *Heath v. Hard Rock Café Int'l, Inc.*, No. 6:10-cv-344-Orl-28KRS, 2011 WL 5877506, at *4 (M.D. Fla. Oct. 28, 2011)).

### B. Modification Clause and Confidentiality Agreement

The settlement agreement contains a clause outlining that it "shall not be altered, amended, or modified by oral representation made before or after [its] execution." Doc. 24-1¶ 3(O). Instead, all modifications of the agreement must be in writing and "duly executed by all [p]arties."*Id.* The settlement agreement contains another, similar clause in ¶ 3(K) ("This [a]greement may not be terminated, modified, amended, or changed except by a writing signed by the Parties, and it may not be discharged except by . . . a writing signed by the Party to whom performance is to be rendered."). These provisions are unenforceable because a review of the settlement in its "final form" is necessary for a court to find it is "fair and reasonable," the parties should not be able to later amend the agreement. *Roman v. Lopez*, No. 6:18-cv-621-Orl-41LRH, 2020 WL 1650596, at *3 (M.D. Fla. Mar. 31, 2020), *report and recommendation adopted*, 2020 WL 1669251 (M.D. Fla. Apr.3, 2020).

The settlement agreement also contains a confidentiality clause which precludes the parties from discussing the terms of the agreement and the negotiations related to the agreement with any outside party, absent specifically articulated circumstances. Doc. 24-1 at ¶3(X).

Generally, confidentiality clauses are disfavored because they thwart "Congress's intent to ensure widespread compliance with the FLSA." *Pariente v. CLC Resorts and Dev., Inc.,* No. 6:14-cv-615-Orl-37TBS, 2014 WL 6389756, at *5 (M.D. Fla. Nov. 14, 2014) (internal quotations and citation omitted). In any event, as with general release provisions, courts have approved clauses when a plaintiff receives separate

8

consideration. *See Smith v. Aramark Corp.*, No.: 6:14-cv-409-Orl-22KRS, 2014 WL 5690488, at *3-4 (M.D. Fla. Nov. 4, 2014) (approving FLSA settlement providing separate consideration for confidentiality and non-disparagement clauses); *Caamal v. Shelter Mortg. Co.*, LLC, No. 6:13-cv-706-Orl-36KRS, 2013 WL 5421955, at *4 (M.D. Fla. Sept. 26, 2013) (approving FLSA settlement providing separate consideration for a general release and non-disparagement clause).

Here, there is no evidence or argument made by counsel that plaintiff received separate consideration for the confidentiality clause in the settlement agreement. *See* docs. 21, 24. Without evidence plaintiff received separate consideration for the confidentiality clause, I recommend the clause be found unenforceable by the Court. *Brown v. SeaDog Brewpub BV, LLC*, No, 6:16-cv-898-Orl-40GJK, 2016 WL 7743030, at *5 (M.D. Fla. Dec. 29, 2016) (citations omitted).

Nevertheless, the unenforceability of the modification and confidentiality clauses do not preclude approval of the parties' settlement agreement because the agreement contains a severability clause. *Id.* The clause states that if "any provision or clause of this [a]greeement . . . is determined by a court of court of competent jurisdiction to be invalid, void, or unenforceable" such provision or clause may be amended or stricken and the remaining provisions "will remain in full force and effect and shall in no way be affected, impaired or invalidated so long as all of the [p]arties agree that the [a]greement shall remain in full force and effect." Doc. 24-1 ¶3(N). Thus, I recommend the Court strike the modification clauses and confidentiality clause from the settlement of plaintiff's FLSA claim.

### C. Attorney's Fees and Costs

As to the award of attorney's fees and costs, the parties explain that plaintiff's counsel will be paid $1,500, doc. 22 at 3; and that the amount negotiated for attorney's fees and costs was separately negotiated from plaintiff's award. Doc. 22 at 3, *see Bonetti*, 715 F. Supp. 2d at 1229 (concluding that the attorneys' fees having been addressed "independently and seriatim [give] no reason to assume that the lawyer's fee has influenced the reasonableness of the plaintiff[s'] settlement."). The undersigned, having determined that the settlement is facially reasonable and having no reason to believe the recovery negotiated was adversely affected by the fee award, recommends approval of the settlement, and need not undertake a lodestar review. *Bonetti*, 715 F. Supp. 2d at 1228.

### Recommendation[4]

I respectfully **recommend**:

1. The modification and confidentiality clauses in the proposed settlement agreement be **stricken**. *See* doc. 24-1 at ¶3(O), (K), (X);

---

[4] "Within 14 days after being served with a copy of [a report and recommendation on a dispositive issue], a party may serve and file specific written objections to the proposed findings and recommendations." Fed. R. Civ. P. 72(b)(2). "A party may respond to another party's objections within 14 days after being served with a copy." *Id*. A party's failure to serve and file specific objections to the proposed findings and recommendations alters the scope of review by the District Judge and the United States Court of Appeals for the Eleventh Circuit, including waiver of the right to challenge anything to which no specific objection was made. *See* Fed. R. Civ. P. 72(b)(3); 28 U.S.C. § 636(b)(1)(B); 11th Cir. R. 3-1; Order, doc. No. 3, No. 8:20-mc-100-SDM, entered October 29, 2020, at 6.

2. The parties' Joint Motion to Approve Settlement Agreement, doc. 22, be **granted to the extent that the** Court enter an Order and Stipulated Final Judgment[5] **approving** the parties' settlement agreement as amended by the Court;

3. This case be **dismissed with prejudice**;

4. The Clerk be directed to **close** the file.

**Entered** in Jacksonville, Florida, on October 20, 2022.

LAURA LOTHMAN LAMBERT
United States Magistrate Judge

c:
The Honorable Timothy J. Corrigan, United States District Judge
Matthew W. Birk, Esquire
William L. Grimsley, Esquire

---

[5] This recommendation is not intended to suggest that the Court enter judgment against defendant. Rather, this recommendation is that the Court enter a combined Order and Stipulated Final Judgment approving the parties' settlement agreement.

11